Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5788 | **DATE** | 8/2/2001 |
| **CASE TITLE** | Robert Baumgardner vs. County of Cook | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing held.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment [43-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | AUG 0 3 2001 | |
| | Notified counsel by telephone. | date docketed | 58 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | FILED FOR DOCKETING | docketing deputy initials |
| | Copy to judge/magistrate judge. | 01 AUG -2 PM 4:07 | 7/31/2001 date mailed notice |
| DK | courtroom deputy's initials | Date/time received in central Clerk's Office | DK mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



ROBERT BAUMGARDNER, )
)
Plaintiff, ) No. 99 C 5788
)
v. ) Magistrate Judge Morton Denlow
)
COUNTY OF COOK, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Baumgardner ("Plaintiff"/ "Baumgardner") filed a three-count second amended complaint against his employer County of Cook Highway Department ("Defendant"/"Cook County"). Count I was brought against Cook County alleging discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-213.[1] Defendant has moved for summary judgment contending Plaintiff is not a qualified individual under the ADA and his lawsuit was not timely filed. Because issues of material fact exist, Defendant's motion for summary judgment is denied.

---

[1] Count II was a claim for retaliation against Cook County under the ADA. Count III was a claim against his supervisor, William Krystyniak, under 42 U.S.C. §1983, alleging a violation of the Equal Protection Clause of the Fourteenth Amendment. Following oral argument, Plaintiff filed a motion to voluntarily dismiss Counts II and III with prejudice. That motion was granted. All that remains is Count I. The Court has previously denied Defendant's motion to dismiss Counts I, II, and III. *Baumgardner v. County of Cook*, 108 F. Supp.2d 104 (N.D. Ill. 2000).

# I. BACKGROUND FACTS

## A. The Parties

Baumgardner has been an employee of the Cook County Highway Department since May 9, 1994. From May 9, 1994 until October 1998, Baumgardner was classified as a Laborer I. Thereafter, Baumgardner was reassigned and reclassified as an Engineer Technician I. (Def. Ex. 19). Cook County is a unit of local government. This litigation arises from Defendant's decision to reassign and reclassify Baumgardner.

## B. Plaintiff's Laborer I Position

As a Laborer I, Baumgardner's duties included a variety of manual labor functions for the maintenance of county roads and right-of-way. (Def. Ex. 21). While in the position of a Laborer I, Plaintiff filed seven separate worker's compensation claims. (Tucker Aff. ¶3). Several of Plaintiff's worker's compensation claims involved reoccurring injuries to his right knee.

On May 4, 1998, Baumgardner again injured his knee in a work-related accident. On June 3, 1998, Baumgardner's doctor, Clay A. Canady, released him to return to his full duties with a single permanent restriction that "he should not be working on inclines, declines, ditches or trenches. All the other responsibilities of the two-page job summary of a Laborer I can be met by this patient at this time." (Def. Ex. 14). His return to work form, dated June 22, 1998, contained a temporary restriction prohibiting Baumgardner from "working on inclines greater than 30 degrees for 6 weeks." (Def. Ex. 11).

2

In September, 1998, Superintendent Walter Kos ("Kos") requested Baumgardner to have his doctor clarify his physical restriction. (Kos Aff. ¶10, Def. Ex. 13). Kos claims that he did not see Dr. Canady's letter prior to October, 1998. (Kos Aff. ¶10).

Canaday diagnosed Baumgardner with the degenerative condition, chondromalacia.[2] (Pl. St. Facts at 6-19). According to American Medical Association guidelines, Plaintiff is considered to have a "50% impairment of the lower extremity, which amounts to a 20% impairment of the whole person." (Def. Ex. 14). As a result, Plaintiff states that he is significantly limited in performing the "major life activity" of walking compared to the average population.

### C. Reassignment to Engineer Technician I

After learning of Plaintiff's condition, Krystyniak consulted Charles Tucker ("Tucker"), Manager of the Workers' Compensation Risk Management of County of Cook, to discuss Baumgardner's permanent medical restrictions and the potential liability for reoccurring injuries. (Tucker Aff. ¶¶8-9). Defendant decided Plaintiff would be reassigned to the position of an Engineer Technician I after learning about Baumgardner's permanent physical restrictions. (Kos Aff. ¶¶13-16).

On October 16, 1998, a meeting was held to discuss Baumgardner's restrictions. (Def. Ex.16). In attendance were Baumgardner, his worker's compensation attorney, Donovan Fechner, Superintendent Walter Kos, Krystyniak and Chief Legal Advisor for the

---

[2]Chondromalacia is the softening of any cartilage, Stedman's Medical Dictionary, p. 333, 1995 (26th Ed.).

Highway Department, Susan Salita. At this time, Baumgardner was offered the lower position of Engineer Technician I, with a pay differential which would allow Baumgardner to maintain his current salary as a Laborer I. (Kos Aff. ¶¶13-15 ). Baumgardner sent a letter to Defendant dated October 16, 1998, in which he claimed that he was "forced" to take the new position. (Pl. Ex. B). In or around December 1998, the County Board formally reclassified Baumgardner to an Engineer Technician I. (Kos Aff. ¶16).

### D.  Right to Sue Letters

On March 5, 1999, Baumgardner filed a charge with the EEOC alleging disability discrimination and retaliation. (Def. Ex. 2, "EEOC Charge"). Subsequent to filing the charge, Plaintiff alleges that he had his worker's compensation attorney, Anthony Russo ("Russo"), request a right to sue letter. The request incorrectly stated Baumgardner's address as 7920 164th Place, Tinley Park instead of the correct address of 8720 West 168th Street, Orland Park. (Def. Ex. 8).

On May 19, 1999 the EEOC issued the first notice of right to sue letter via certified mail to the Tinley Park address. (Def. Ex. 9). The certified letter was returned as "moved, left no address". (Id). This letter advised Plaintiff of his right to file a civil action in the U.S. District Court within ninety (90) days of receipt.

On June 10, 1999, the EEOC sent a second notice of right to sue to Plaintiff. (Def. Ex. 10). This letter was addressed to the Orland Park address. In June, 1999, Plaintiff received the second notice via certified mail to his Orland Park address. (Def. Ex.10). The record is silent as to the actual date received. Except for the date and the address, the second letter

was identical to the first and also advised Plaintiff that he had 90 days from receipt to file suit. There was no mention in the second letter that the first letter had been returned undelivered. Plaintiff states the second letter was his first notice of his right to file a civil action within 90 days. (Pl. Aff. ¶5). Baumgardner filed his complaint on September 3, 1999, which was more than 90 days after the first letter, but within 90 days of the second letter.

## II. SUMMARY JUDGMENT STANDARD

Defendant moved for summary judgment on the issues of whether Baumgardner is a "qualified individual with a disability" and whether his suit was timely filed. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Sinkler v. Midwest Prop Mgmt. Ltd. P'ship*, 209 F.3d 678 (7th Cir. 2000). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. *Sinkler*, 209 F.3d at 683; *Eiland v. Trinity Hosp.*, 150 F.3d 747, 750 (7th Cir. 1998).

The movant bears the burden of establishing that there exists no genuine issue of material fact. *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2554 (1986). If the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Rule 56 (c); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2549. Rule 56(c)

mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2547. A fragment of evidence in support of the non-movant's position is insufficient to successfully oppose a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2515 (1986).

The opposing party must "go beyond the pleadings" and set forth specific facts to show that a genuine issue exists. *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 83 F. Supp. 2d 934 (7th Cir. 1993). This burden must be met by appropriate citations to relevant evidence and cannot be met with conclusory statements or speculation. *Brasic v. Heinemann's Inc., Bakeries*, 121 F.3d 281, 286 (7th Cir. 1997).

Weighing evidence, deciding credibility, and inferring reasonable deductions are responsibilities for a jury and not for a judge to decide in making a summary judgment determination. *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2515.

### III. ISSUES TO BE DECIDED

Defendant's motion for summary judgment raises the question of whether material issues of fact exist regarding the following issues: 1) whether Plaintiff's complaint is time barred; 2) whether Plaintiff is a disabled person under the ADA; 3) in the event Plaintiff is disabled, whether he can perform the essential functions of the Laborer I position; and 4) whether Plaintiff was accommodated under the ADA by reassignment to the Engineer

Technician I position. The Court will discuss the issues in order.

## A. Whether Plaintiff's Claim is Time Barred Involves a Material Issue of Fact

Defendant first argues that Plaintiff's ADA claim is barred because Plaintiff did not file his complaint within 90 days after the first right to sue letter dated May 19, 1999 could have been received. Plaintiff contends that he filed suit within 90 days after receipt of the second right to sue letter dated June 10, 1999, which was his first notice.

The timely filing of an EEOC charge is "not a jurisdictional prerequisite to be filed as a federal lawsuit, but rather, is more akin to a statute of limitations and subject to...equitable tolling under appropriate circumstances." *Hentosh v. Herman M. Finch Univ. of Health Sciences*, 167 F.3d 1170, 1174 (7th Cir. 1999). "Equitable tolling applies when a plaintiff, despite the exercise of due diligence and through no fault of his own, cannot determine information essential to bringing a complaint," *Ashafa v. City of Chicago*, 146 F.3d 459, 463 (7th Cir. 1998), and is based on the plaintiff's excusable neglect. *See, e.g., Hamilton v. Komatsu Dresser Indus., Inc.*, 964 F.2d 600, 605 (7th Cir. 1992).

Baumgardner focused his argument on the issue of whether it was he or his attorney who filed the incorrect address with the EEOC. That is not the issue because a mistake by Plaintiff's attorney is attributable to Plaintiff on the theory of agency. *U.S. v. 7108 West Grand Avenue, Chicago, Illinois*, 15 F.3d 632 (7th Cir. 1994). The issue is whether Baumgardner or his agent had notice of the first right to sue letter. If not, should Plaintiff be barred from filing suit, when the second right to sue letter did not inform him that an earlier letter had been returned to the EEOC undelivered.

7

In *Garza v. Cook County State's Attorney*, 1999 U.S. Dist. Lexis 11228 * 4 (1999), the court denied defendant's motion for summary judgment and held that a question of fact existed in a case with facts similar to the present case. In *Garza*, the plaintiff, along with her attorney, filed a right to sue letter with the EEOC. *Id.* The attorney relocated and when the EEOC sent the first right to sue letter, it was returned as "moved with no new address." *Id.* at *8. Almost a year later the attorney informed the EEOC of his new address and requested another right to sue letter for his client. *Id.* The EEOC sent the plaintiff, via the plaintiff's attorney, a second right to sue letter. The court concluded that there was a genuine issue of material fact as to whether the plaintiff knew that a first right to sue letter had been sent.

Similarly, a question of fact exists regarding whether Baumgardner's claims are time barred.

**B.    Overview of ADA**

The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such individual in regard to [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In order to make out a prima facie case, Baumgardner must establish that he is a qualified individual with a disability within the scope of the ADA. 42 U.S.C. § 12112(a). The ADA prohibits discrimination against, and requires an employer to make reasonable accommodations for, the known limitations of an otherwise qualified employee with a disability. 42 U.S.C. §12112(a), (b). The statute provides that no covered entity "shall discriminate against a qualified individual with a

8

disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. §12112(a). "The ADA proscribes discrimination against only 'qualified individual[s]' with a disability." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996). In order to make out a *prima facie* case of disability discrimination, Baumgardner must show: (1) he is disabled within the meaning of the ADA, and (2) he is a qualified individual to perform the functions of his job employment with or without reasonable accommodation, and (3) he suffered from an adverse employment decision due to his disability. *Pugh v. City of Attica, Indiana*, 2001 U.S. App. LEXIS 16794 (7th Cir. 2001).

### 1. Whether Baumgardner is Disabled or Was Regarded as Disabled Involves a Material Issue of Fact

To meet the first element, Baumgardner must establish he is disabled under the ADA by showing one of the following: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such impairment. 42 U.S.C. §12101(2); *Duda v. Franklin Park Pub. Sch. Dist. 84*, 133 F.3d 1054, 1058 (7th Cir. 1998). "Substantially limits" means that "the person is either unable to perform a major life function, or is significantly restricted in the duration, manner, or condition under which the individual can perform a major life activity, as compared to the average person in the general population." *Contreras v. Suncast Corp.*, 237 F.3d 756, 762 (7th Cir. 2001); 29 C.F.R. § 1630.2(j). The Plaintiff asserts he is

substantially limited in a major life activity, walking, and Defendant regards him as having such an impairment.

Baumgardner states his inability to walk inclines or declines greater than 45 degrees for long periods qualifies him as disabled and different from the average person in the population. Defendant disagrees, claiming Plaintiff's injuries are not unlike the average population. Defendant believes that being unable to walk on inclines of 45 degrees does not qualify as a disability as defined by the ADA. Baumgardner's doctor diagnosed him with the degenerative condition of chondromalacia. Plaintiff's doctor claims he is considered to have a "50% impairment of the lower extremity, which amounts to 20% impairment of the whole person" and therefore, Plaintiff has an injury unlike the 'average population.'" (Pl. Ex. A).

It is a question of fact as to whether not being able to walk inclines greater than 45 degrees renders an individual disabled. In order to decide whether Baumgardner is disabled, a jury must evaluate if his injuries are unlike that of the general population. This issue creates a fact question that should be explored by a jury. *Olbrot v. Denny's*, 1998 U.S. Dist. LEXIS 12990, *7 (N.D. Ill. 1998).

The regulations define "regarded as having such an impairment" to mean the employee: (1) has a physical or mental impairment, which does not substantially limit major life activities, yet is treated by a covered entity as constituting a limitation, (2) has a physical or mental impairment which substantially limits major life activities only as a result of the attitudes of others toward such impairment, or (3) has none of the physical or mental

impairments defined in the regulations but is treated by a covered entity as having a substantially limiting impairment. 29 C.F.R. §1630.2(1).

In *Olbrot v. Denny's*, 1998 U.S. Dist. LEXIS 12990, *7 (N.D. Ill. 1998), the court found the defendant's perception concerning whether plaintiff could work raised a genuine issue of fact for a jury to decide. In *Olbrot*, the plaintiff was a waitress at Denny's restaurant. *Id.* Even though plaintiff was diagnosed with cancer, she was still able to perform the essential duties of her job. *Id.* The court held that due to comments made by her employer indicating knowledge of her cancer, she was regarded as having an impairment that substantially limited her ability to work. *Olbrot*, 1998 U.S. LEXIS 12990 at *8-9.

Likewise, there is an argument made by Baumgardner, similar to the argument made in *Olbrot*, that the Defendant did believe the Plaintiff suffered from a 'disability' that rendered him unable to perform the essential functions of a Laborer I. It follows then that due to Defendant's belief that Plaintiff was disabled, Defendant transferred Plaintiff to the position of an Engineer Technician I.

### b. Whether Baumgardner Can Perform the Essential Functions of the Laborer I Position Involves a Material Issue of Fact

In order for Baumgardner to meet the standard that he is a qualified individual with a disability, he must prove he is able to perform the essential functions of a Laborer I, with or without a reasonable accommodation. *Gile v. United Airlines, Inc.*, 213 F.3d 365, 372 (7th Cir. 2000). This involves a two step inquiry. "First, [the Plaintiff] must demonstrate that he satisfies the prerequisites for the position, i.e. that he has the proper training, skills and

experience. Second, he must show that he could perform the essential functions of [the position], either with or without reasonable accommodations." 42 U.S.C. §12111(8); *Bombard v. Fort Wayne Newspapers*, 92 F.3d 560, 563 (7th Cir. 1996).

Neither party disputes Baumgardner's ability to meet the first criteria because he had been working as a Laborer I for approximately four years. However, Baumgardner must also prove the second element, that he can perform the essential job functions of a Laborer I, with or without accommodation. *Id.*

The parties disagree whether Baumgardner can perform the essential functions of the Laborer I position. The court must determine what the essential duties of the Laborer I position are. Evidence as to what the essential functions include, but are not limited to: (1) the employer's judgment as to what functions are essential; (2) written job descriptions prepared for advertising for, or interviewing, job applicants; (3) the amount of time spent on the job performing a particular function; (4) the consequence of not requiring an employee to perform a function; (5) the terms of a collective bargaining agreement; and (6) work experience of past and present employees in the position. *Winfrey v. City of Chicago*, 2001 U.S. App. LEXIS 16793 *8 (7th Cir. 2001). Defendant's contention that Baumgardner cannot perform the essential functions of the Laborer I position fails due to a lack of specification concerning what the essential functions are. *Id.* When the parties have not explained to the court, what constitutes the "essential" part of a job function with adequate specificity, a genuine issue of material fact is created. *Coleman v. Keebler Co.*, 997 F. Supp. 1102 (N.D. Ind. 1998).

The Laborer I job description lists many job requirements, however there is nothing in the description that states whether an employee must be able to perform each and every duty. (Def. Ex. 21). There is a caveat at the end of the description that states that "the duties listed are not set forth for purposes of limiting the assignment of work. They are not to be construed as a complete list of the duties normally to be performed under a job title." (Id). Therefore, there is a material question of fact as to what are the essential duties of a Laborer I.

In *Coleman*, 997 F. Supp. 1102, plaintiff was terminated from his position when he was unable to lift 20 pound bags after incurring an on the job injury. The court held the written job description of a fry cook did not conclusively answer all relevant inquires into the essential functions of the fry packer position. *Id*. Due to the lack of information in the job description as to whether lifting such weight was an 'essential' function of the job, the court concluded that it was an issue of material fact and denied summary judgment. *Id*.

Likewise, in *Barton v. Tampa Electric Co.*, 1997 U.S. Dist. LEXIS 3168 *7 (N.D. Ill. 1997), the defendant argued that the plaintiff could not perform the essential functions of her job. *Id*. The plaintiff's own doctors indicated that she could not perform 70% of her assigned work load. *Barton*, U.S. Dist. LEXIS at 3170 *8. However, since defendant failed to produce any documentation to the court as to what the essential functions were, the defendant's summary judgment motion was denied. *Barton.*, U.S. Dist. LEXIS at 3170 *9.

The parties disagree as to the essential functions of the Laborer I position. Defendant claims that to be qualified as a Laborer I, the individual must be able to perform all of the

13

functions listed. Plaintiff disagrees. Baumgardner lists many duties he can still perform and only one that he cannot. (Pl. Ex. A). There is a genuine issue of material fact regarding whether Plaintiff can perform the essential functions of the Laborer I position

### c. Whether Defendant Accommodated Baumgardner by Transferring Him to the Engineer Technician I Position Creates a Question of Fact

To establish a claim for failure to accommodate under the ADA, Baumgardner must demonstrate that he is a disabled person as defined by the statute, that Defendant knew about his disability and that Baumgardner is otherwise qualified to perform the essential functions of his Laborer I duties, with or without reasonable accommodation. *Winfrey v. City of Chicago*, 2001 U.S. App. LEXIS 16793 (7th Cir. 2001).

Defendant contends that even if Baumgardner is disabled, he was accommodated by being transferred to Engineer Technician I. The ADA states that an employer must accommodate a qualified employee. 42 U.S.C. §12112(b)(5)(A), §12112(b)(5)(B). Under the ADA, an employee begins the accommodation 'process' by informing his employer of his disability; at that point, an employer's "liability is triggered for failure to provide accommodations." *Beck v. University of Wisc. Bd. of Regents*, 73 F.3d 1130, 1134 (7th Cir. 1996). The only instances when an employer does not have to make an accommodation is when "[the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. §12112(b)(5)(A). However, "once an employer's responsibilities to provide reasonable accommodation is triggered, the employer must engage with the employee in an 'interactive process' to determine the appropriate

14

accommodation under the circumstances." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996).

The reasonable accommodation element of the ADA imposes a duty upon employers to engage in a flexible, interactive process with the disabled employee requiring accommodation. *Id.* This interactive process allows the employer and employee to identify the employee's precise limitations and discuss accommodations which would enable the employee to continue working. See 29 C.F.R. § 1630.2 (o)(3); see also 29 C.F.R. Pt. 1630, App. §1630.9. If the employee is unable to perform his job, with or without accommodation, the employer must consider reassignment as one form of accommodation. See, 42 U.S.C. § 12111(9)(B).

In *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685 (7th Cir. 1998), the court reversed summary judgment in favor of defendant holding the record was susceptible to the possibility that plaintiff's transfer was directive, and not interactive. The court held that there was a genuine issue of material fact concerning the degree of interaction in the case which precluded summary judgment.

Likewise, in the present case there is a genuine question of fact as to whether the Plaintiff was reasonably accommodated by the Defendant. Defendant claims Plaintiff was reasonably accommodated when he was transferred to a position that would not be affected by his medical restrictions. Additionally, Defendant argues the accommodation is more than reasonable because Defendant gave Baumgardner a pay differential to keep him at the same salary. Baumgardner contends that his move to Engineer Technician I was not a reasonable

accommodation. He asserts he was able to perform his Laborer I position and should never have been transferred. He denies he agreed to the transfer.

The purpose of the ADA's accommodation rule is an attempt to create a fair middle ground for both employer and employee. *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 693 (7th Cir. 1998). However, deciding whether an accommodation is reasonable is not meant to be a game of tug of war. Whether there was an interactive process between the parties which resulted in an appropriate accommodation is a genuine issue of material fact which will be decided by a jury.

## IV. CONCLUSION

This case raises a number of fact questions for a jury to decide. First, whether Plaintiff's complaint is time barred. Second, whether Plaintiff is a disabled person under the ADA. Third, in the event Plaintiff is disabled, whether he can perform the essential functions of the Laborer I position. Lastly, whether Plaintiff was accommodated under the ADA by reassignment to the Engineer Technician I position. For the foregoing reasons, **Defendant's motion for summary judgment is denied.**

**SO ORDERED THIS 2nd DAY OF AUGUST, 2001.**

_____
**MORTON DENLOW**
**United States Magistrate Judge**

**Copies delivered in open court or mailed to:**

Jonathan C. Goldman
Goldman & Ehrlich
19 S. LaSalle, 15th Flr.
Chicago, Illinois 60602

**Attorney for Plaintiff**

Helen K. Kim
Katherine A. Paterno
Assistant State's Attorneys
500 Richard J. Daley Center
Chicago, Illinois 60602

**Attorneys for the Defendant**